1-2-1-0-7-1-3-W-C Gary Malecki, appellant by Matthew Coleman v. Illinois Workers' Compensation Comm'n, Waste Management Appellee by Mitzi Westerhoff. Mr. Coleman, you may proceed. Good morning. May it please the court, justices, council. My name is Matthew Coleman and I represent the claimant in this matter and perhaps what is the most embarrassing defeat of my career and that's because my claim and my proofs went in and I lost a case that was essentially unroboted. The claimant in this matter was, at the time of the manifestation, was a commercial driver for waste management for 30 years. The claimant filed an application alleging a back injury with the date of accident as, quote, manifestation July 6, 2016. Claimant further pleaded his injury occurred as, quote, repetitive trauma in the course of employment. Now, claimant set out and put on proofs to corroborate this pleading. Specifically, we put in, by testimony of the claimant, a litany of job duties and physical requirements which show that the claimant was required to push, pull, twist, turn up to 200 pounds on a daily basis hundreds of times per day. These job duties and physical requirements were corroborated by his waste management supervisor, Zito Basinger, Rich Sarek, and the claims manager, Amy Gallagher. It was also corroborated by the Waste Management Safety Rules book. Claimant testified that he relayed all of these physical requirements to his orthopedic surgeon, Dr. Ashraf Darwish. Darwish, in turn, memorialized this in his initial note of treatment in history on August 5, 2016. Darwish further testified that the claimant relayed these job duties to him during his deposition. Now, Darwish used this history as a basis for his opinion, and he testified to a spine surgery that the claimant's repetitive job duties and physical requirements aggravated his degenerative disc disease of the lumbar spine, his spondylolisthesis of the lumbar spine to the point where it caused a new symptom, a motor defect in his right foot, known as drop foot, and that he required lumbar fusion surgery to correct it. Now, at the hearing, respondent called his own claims manager, Amy Gallagher, who on cross-examination unequivocally admitted that despite having reviewed the August 5, 2016, note of Dr. Darwish, which makes reference to twisting and turning and pushing and pulling for years as a garbage man, she never evaluated this claim as a repetitive trauma injury. Coleman, let me interject a question and explain why part of your argument that the commission went off the rails. As I understand it, Waste was arguing that the claimant failed to make a connection between his work activities and his condition of well-being because the only event which caused the claimant to seek medical attention occurred while he was walking. I mean, that's sort of their simplified version and the commission may have bought into it. So what's your response to that? Well, that's exactly why we're here, Justice Hudson. If I had pledged that Mr. Malecki suffered a back injury on July 6 due to walking, I'd have a big problem. I'd be the first to admit but I didn't plead that. I didn't plead that any of the job duties or that walking had anything to do with his aggravation of spinal osteosis and degenerative disc disease causing drop foot. So the fact that the commission with that utterance stated that the claimant failed to show an increased risk of walking shows that they didn't even analyze what the claimant's elected theory of recovery was. And that's why I believe that the standard of review today is de novo. It's no different than if a court were to evaluate my premise's liability case as a product's case. That's an error and the claimant is entitled to a de novo review. Are there any medical records which would support the argument that the claimant had suffered from motor deficits in his right foot prior to July 6? No, and I lay out in my brief and we have never shied away from the fact that the claimant in this matter had a sore back. He admitted that on the stand during his direct examination and all of his symptoms from January of 2008 up until the manifestation was a sore back which radiated into his right posterior thigh. There are no medical records which suggest a new motor defect of drop foot in the right foot, your honor. Okay. So getting to the actual medical evidence, respondent submitted the report of Dr. Alexander Ghanayem who did not even comment on the claimant's elected mechanism of repetitive trauma. Instead, Dr. Darwish stated that simply walking back to your truck is not a work injury. He puts on his robe and he makes a legal distinction between symptoms that occur at work as opposed to symptoms that are related to work. This does not rebut the claimant's position that the repetitive physical requirements aggravated his degenerative disease and spinal anesthesia is causing a motor defect which required a lumbar fusion which did relieve the drop foot. So at this point, the claim for injury under the claimant's elected theory of recovery, repetitive trauma is unroboted. Then 11 months later, arbitrator Stephenson issues a decision denying benefits because first, claimant failed to provide any testimony about the actual route activities he was working on July 6th. That sounds like a specific occurrence analysis to me. Second, the records show that he was not actually working on a specific occurrence on July 6th. And last and most puzzling is that the claimant did not demonstrate that he was at an increased risk exposed by walking. So these are factors that I would find important if I had pleaded that he injured himself walking on July 6th but I didn't and that's why we're here. And I already pointed out that it's my position that this claim should be reviewed on a de novo basis because they applied the wrong legal standard. The Caterpillar case for which I cited makes the distinction between a specific occurrence and a repetitive trauma. And in that Caterpillar case, the commission sui sponte amended an application from a specific occurrence to a repetitive trauma to conform to the proofs. Here, the exact opposite happened. I pleaded repetitive trauma and the claim was denied because I was unable to prove a specific occurrence or show convincing evidence that a specific occurrence occurred on the 6th. So, in its response, the claimant cites McRae and Johnson and I want to touch base on those. Johnson is a carpal tunnel case. In that case, three treaters and a claimant's own examiner could not link the job duties to the claimant's own carpal tunnel. Her own orthopedic surgeon said he was uncertain. In McRae, it was a back injury but it was a herniated disc which generally is a more acute injury. And she treated for 14 months without relating her job duties to the incident, underwent a discectomy without relaying her job duties to her physician and only after 14 months did she come back and say, you know, I think this might be related to work. Well, her surgeon under the circumstances said, very well, maybe. And the court found in both cases that that was insufficient medical evidence to prove the arising out of under repetitive trauma as well as causation. I'd like to touch base on the notice issue. In this case, it's our position that defective was given in that the petitioner relayed that he had dropped foot to his supervisor, Jack Schwab. A form 45 was completed. The claims manager testified that she had an opportunity to investigate the claim. She talked to the claimant on numerous occasions, reviewed medical records before denying it. Now, the only reason why it's defective is because it manifested in a drop foot localized to the right foot. So they had it down as a foot injury when in reality, it turned out to be a back injury. They were not prejudiced by this. So I just want to touch again on what Justice Hudson pointed out is that when the commission or an arbitrator requires, but misapprehends what the theory of recovery is, it's impossible to win your case. It will be impossible for me to prove a case that I didn't intend to prove. For that reason, the claimant respectfully requests that this court reverse the decision of the circuit court, reverse the decision of the commission and award benefits. Thank you. Thank you, Mr. Coleman. You'll have time and reply. Ms. Westerhoff, you may respond. Your speaker, turn on your speaker. There you go. Are we good now? Thank you. You're good now. Okay. Thank you. May it please the court. My name is Mitzi Westerhoff and I am here on behalf of defendant Appellee Waste Management. It is our position that the case should be decided according to the manifest way to the evidence standard of review and that the decision of the commission should be affirmed. In response to Appellate's arguments, I would like to address some of his points. First, Mr. Coleman has continually denied and ignored the statements made by his client that at the time he recognized his issues, he reported he was just walking. That information was provided to the treating doctor and the independent medical examiner that assessed him also reviewed that. I can interject the question. Wasn't it clear that the claimant's theory of recovery was repetitive trauma? However, it was his statement. What was in the application for adjustment of claim? There are actually two applications filed. Originally, there was one that was focused on a specific trauma and there was a second one that said repetitive trauma manifestation. It says repetitive trauma in the course of employment is the exact quote and identified the manifestation date of July the 6th. Yes, sir. I agree with that statement that that's what the application which was ultimately tried reflected. I want to get to a couple other issues. The arbitrary decision which the commission affirmed and adopted says that the petitioner established that on July the 6th, he sustained a manifestation of a repetitive trauma injury to the lumbar spine. He says for the following reasons, the petitioner was unable to provide any specific testimony about the actual router activities that he was working on on July the 6th. Now, that is just manifestly wrong. I've got his testimony here. He testified to what he did on a regular basis in his route. He described it and he specifically said that before he experienced this, he had moved two 200-pound, I guess, garbage lift boxes, he called them, weighing as much as 200 pounds. He did it between 5 and 30 times a day and he moved those two things. Then, he developed his drop foot or he had difficulty with his leg as he was walking back to the truck. Is that not his testimony? I will agree that was the testimony that was shared at court. How in heaven's name could the arbitrator find that the man never provided specific testimony about his actual router activities on July the 6th? Thank you, sir. I believe that if you look to the testimony of Ms. Gallagher, who was the initial person to speak with him relative to investigating any activities, he did not tell her any of that information. No, that's not what the arbitrator said. The arbitrator said he didn't provide any specific testimony. That's just wrong. He did. The arbitrator makes a big deal about the petitioner claiming that he did not work on July the 7th and the records established that he worked on the 7th and 8th. What is that relevant to? His ability to continue working and what he was doing. I think that statement goes to the effect that we don't really know when this manifestation happened because the first medical is from Dr. Hamadani on the 12th of July, where he dates back his issues going on for over three weeks at that point in time. I believe the arbitrator was showing there were inconsistencies in his testimony and that the arbitrator did not find Mr. Malecki to be credible as to the circumstances of what actually occurred during July of 2016 and when his problems originated. I also believe to further speak to your point, sir, that when we talk about his job activities and the testimony that was made, what appellant's counsel continues to allude to as to manifestation is that it's the entire aspects of the job that are problematic for this individual. We don't have any assessment as to what was the nature of the activity that was a manifestation. I believe that's where we can look to case law on repetitive trauma to know that it's not the job as a whole is what has been determined to be problematic. Let me refer you to some of his testimony. He testified that when he was midway through his route on July the 6th, after dumping two yard containers, which he had testified before weigh 200 pounds apiece, they were filled with cardboard. He started to feel his right foot getting heavy while walking back to his truck. He went further along in his route. He was unable to move his right foot, push the gas pedal or the brakes, and that he completed his work shift, went home, where he continued to have difficulty in his right foot. So, the arbitrator seems to me to make the same mistake that you're making, that he never specifically said what he was doing or had done before he felt the right foot problem. Second of all, your expert never, ever gave an opinion as to whether the regular duties of this claimant could cause drop foot. All he said was that just walking wouldn't do it. I mean, I look at this record, this claimant never contended that he developed this from just walking. I mean, that wasn't even his theory of the case. I believe that, if I may, I believe that the August 5th report from Dr. Darwish does say that what the plaintiff reported to him was that he was just, sorry, that what the plaintiff reported to him at the time was that he was just walking. No, I think the plaintiff reported, excuse me, I think the plaintiff reported to him that he began to feel the right foot problem as he was walking. Not that he was just walking. I will agree with your assessment on that one. But yes, as he was walking was when he began to feel the foot problem. And the allegations that were made at the time of trial and the testimony that was presented at the time of trial is the first that we hear about the issues that were arising during the day from the plaintiff. I do not believe that the medical records reflect that and that I believe my that it wasn't repetitive, that this wouldn't be a repetitive trauma associated to work because, again, we don't have an actual manifestation. And that's the part that I think is difficult in this case to discover is to discuss is the versions of manifestation and what is appropriate to us, what is appropriate in regards to determining whether there was a manifestation. And I think the arbitrator did address both aspects in his decision, which is why I would, I believe that the manifest rate of the evidence does hold and that it was a reasonable outcome to assess because he covered both issues, which could be potential avenues for an accident discussion. Was Ghanayem's opinion based on his understanding that this man developed this by just walking? That I believe that the report reflects that that is what the petitioner, what the plaintiff reported to him at the time of the evaluation. And that's what the medical records reflect. Did Ghanayem ever offer any opinion as to whether the claimant's job duties contributed to his condition or did not? In the report that was admitted into evidence by agreed to and admitted into evidence by opposing counsel, as he objected to our request to take the deposition, which was another issue in this case, Dr. Ghanayem provided an opinion based upon what the plaintiff reported to him at the time of the evaluation. So, so I take it that your answer is no, Ghanayem did not offer any opinion as to whether the job duties could or might have contributed to his condition. I do not believe you will find that a specific opinion as to the general job duties, because that's not what the plaintiff reported. That's not what the plaintiff established as the original issue in the case. And that's what Mr. Coleman determined that he was going to decide as the issue in the case when he prosecuted it to the, or he pursued the claim to the best of his abilities. Okay. So, as to manifestation, I believe that if we do look at the medical records, we have an assessment on it. And that within six days of the alleged manifestation of July 6, he's at the doctor and the plaintiff connects things back to, for three weeks, he's had ongoing issues going on and that there was no discussion of his work activities at that time. And there was no discussion of what he did. And I also believe that if we take the medical to another step to evaluate causation, we can look at the fact that the opinions of Dr. Darwish do not contain an assessment of what the client, of what the plaintiff's preexisting treatment was. And his testimony during his deposition was to the effect of, he did not review any record beyond what he needed to review in order to provide treatment, nor had he reviewed any MRIs. And I believe the understanding of the MRIs are very significant to causation, which is another reason we are requesting that this decision is affirmed because the causation opinion shows that while Dr. Ghanayem did review the preexisting MRIs and provided an opinion that there were no changes in the condition pre and post-accident, Dr. Darwish did not provide any opinion to that effect. In conclusion, we are requesting that the decision of the commission was supported by the facts and the request of the appellant is to reverse the decision. Sorry, the request of the appellants to reverse the decision. Please forgive me. To reverse the decision, it would significantly lower the burden as to manifestation and indicate that individuals who have had- I have one other question for you. Yes. I'm looking at Darwish's records indicate that the claimant had been working as a truck driver, a job that required repetitive lifting of heavy objects, which can cause multiple back injuries and which contributed to the claimant's current condition. Is that not what his records say? I believe that's what the exact medical record does say, but I do believe the deposition of Dr. Darwish is conflicting on that statement as to whether he had any actual knowledge of the type of route or job that Mr. Malachy performed. So where did Darwish get this to write in his records that the claimant job required him to lift and push heavy objects? It is my understanding and belief that in the deposition you would find a statement from Dr. Darwish that he used his own general knowledge on the topic as opposed to having any knowledge specific to the plaintiff's job and the type of route and what his daily requirements were. Okay. Any further questions? No. Okay. Thank you, Ms. Westerhoff. Mr. Coleman, you may reply. Just a couple of points. As to the credibility of Dr. Darwish's opinions, it should be noted that Dr. Darwish testified that he reviewed all of the records of Dr. Jane before making his opinion at his deposition, and he consulted with Dr. Hamadami during the treatment of the claimant in this matter. So he was in the best position to give an opinion as to these repetitive job duties. Again, it should be noted that claimant testified he told Darwish. Darwish testified that he listened to the claimant tell him his job duties. As to the standard of review, again, we believe it's de novo, but under any standard, whether it be manifest way to the evidence, it's very clear that the commission in adopting Arbitrator Stephenson's decision manifestly misunderstood the evidence as to whether what his job duties were, what the date of the incident was, as well as whether walking is, he was at an increased risk of walking. Based on that, your honors, thank you for your time. Unless you have any other questions, a claimant asks that the decision of the circuit court be reversed and the decision of the commission be reversed and benefits be awarded. Thank you. No questions. No. Okay. Well, thank you, counsel.